## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| SHERRY GAUL, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 23-cv-1301-JES |
| SIGNALHIRE LLC, a Polish Limited Liability Company, ) ) ) | |
| Defendant. ) | |

## <u>ORDER AND OPINION</u>

In this single-count class action case, Plaintiff Sherry Gaul, individually and on behalf of a putative class, filed suit against Defendant SignalHire LLC ("SignalHire"). *See* Doc. 1 (the "Complaint"). Ms. Gaul, an Illinois citizen, alleges that SignalHire violated the Illinois Right of Publicity Act, 765 ILCS 1075 ("IRPA" or the "Act"), by knowingly using free previews of her identity, as well the identities of the class members, without consent, to advertise and promote a paid subscription to its digital recruiting database. *Id.* ¶¶ 2-4, 6.

Ms. Gaul seeks 1) an injunction requiring SignalHire to cease its allegedly unlawful conduct; 2) actual damages or statutory damages of $1,000 per violation to the members of the Class, whichever is greater; 3) punitive damages; and 4) attorney's fees and costs. *Id.* ¶ 42.

SignalHire has moved to dismiss the Complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 10. The motion is supported by a memorandum (Doc. 11) (collectively, the "Motion") and an exhibit. Doc. 11-1. Ms. Gaul opposes the Motion (Doc. 13, the "Response"), and SignalHire replied. Doc. 14 (the "Reply").

SignalHire requested oral argument, but no hearing is necessary to resolve the Motion. *See* Local Rule 7.1(d)(4). For the following reasons, the Motion (Doc. 10) is DENIED in its entirety.

## I.        Background[1]

SignalHire, a Polish company headquartered in Warsaw, operates a website that sells a subscription to access to a database of personal information compiled from various digital sources. Doc. 1, ¶¶ 6, 12, 13 A user may perform a search on the website by inputting a person's first and last name, which leads to the following display, *id.* ¶¶ 13, 14:



If a user chooses one of the listed names, they are guided to a webpage that may include that individual's location, employer, job title, and social media accounts. *Id.* ¶ 15. For example, by selecting "Sherry Gaul" in the above image, a user is directed to the following webpage (hereafter referred to as the "Marketing Page"), *id.*:

---

[1] The Court accepts the facts stated in the Complaint as true for the purposes of a motion to dismiss. *See Fehlman v. Mankowski,* 74 F.4th 872, 874 (7th Cir. 2023).



As seen on the Marketing Page, SignalHire advertises a free trial to access its paid database which features, *inter alia*, the searched individual's email address and phone number. *Id.*[2] SignalHire sells unlimited access to its business database after the trial period expires. *Id.* ¶¶ 16,

---

[2] SignalHire requests the Court to take judicial notice of two web links showcasing the page to sign up for a free trial and its description of how the "free trial work[s]." *See* Doc. 11 at 7 n.2, 8 n.3. To the extent this information may be relevant, the Court notes that it is completely unclear as to how a currently active hyperlink indisputably represents the state of SignalHire's website at the time of any alleged prior violations, rather than any possible continuing violations, and so the Court refrains from considering them at this juncture. *See Felty v. Driver Sols., LLC*, CPK-13-2818, 2013 WL 5835712, at *3 (N.D. Ill. Oct. 30, 2013) ("Due to the evolving nature of websites, this Court is neither required nor inclined to take judicial notice of any website material at this time."); *cf. United States v. Kmart Corp.*, NJR-12-881, 2014 WL 11696711, at *2 (S.D. Ill. Sept. 26, 2014) ("The Internet contains a wide variety of information with varying levels of reliability, and a court is not required to take judicial notice of a website's content.") (citation omitted). Indeed, it appears that the Marketing Page was delisted on SignalHire's website as of the date of this Order and Opinion, which justifies, reflects, and confirms the Court's concern. *See* signalhire.com/profiles/sherry-gaul%27s-email/45433481. This does not, however, prejudice SignalHire from later establishing the relevance of the free trial sign-up page as it existed at the time Ms. Gaul's or the other class members' identifying information was or is generated. Nevertheless, as discussed *infra*, the Court addresses the commercial connection between SignalHire's use of class members' personal information in its free trial offer.

17. SignalHire did not obtain Ms. Gaul's or the class members' consent, whether written or implied due to a previous relationship, to use their names and identities to entice potential customers to purchase a paid subscription. *Id.* ¶ 19.

## II.    Discussion

As noted, SignalHire moves to dismiss the Complaint under Rule 12(b)(2) and Rule 12(b)(6). The Court first turns to the Rule 12(b)(2) challenge, for if this Court lacks personal jurisdiction over SignalHire, then it need not reach the merits of the Complaint. *See e.g.*, *Am. Health Info. Mgmt. Ass'n v. Archetype Innovations, LLC*, JLA-23-3363, 2024 WL 2801651, at *5 (N.D. Ill. May 31, 2024) (denying Rule 12(b)(6) motion as moot, because the court lacked personal jurisdiction over the defendant).

### A. Rule 12(b)(2)

SignalHire seeks dismissal under Rule 12(b)(2), arguing that the Court lacks personal jurisdiction over it because of its *de minimis* connections to the state of Illinois. *See* Doc. 10 at 1.

#### 1.   Legal Standard

When a defendant moves to dismiss a complaint for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *See B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 860-61 (7th Cir. 2024) (citations omitted). And where, as here, a court rules on a Rule 12(b)(2) motion without the benefit of an evidentiary hearing, a plaintiff is only required to make a *prima facie* case for personal jurisdiction. *See NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022) (citations omitted).

"A court evaluating a Rule 12(b)(2) motion generally must accept the truth of the complaint's well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor." *Howell v. Bumble, Inc.*, LCJ-21-6898, 2023 WL 6126492, at *3 (N.D. Ill. Sept. 19, 2023).

4

"Still, where the defendant submits affidavits or other evidence in opposition, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Batton v. Nat'l Ass'n of Realtors*, ARW-21-430, 2024 WL 689989, at *11 (N.D. Ill. Feb. 20, 2024) (citations omitted). If the plaintiff fails to rebut the defendant's evidence, the presumption flips and the court "will accept as true any facts in the defendants' affidavits that do not conflict with anything in the record," *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020), unless the "affidavits merely contain conclusory assertions that the court lacks personal jurisdiction over the defendant." *C&T Consulting GRP., LLC v. SteriLumen, Inc.*, TWP-23-17, 2024 WL 1175449, at *3 (S.D. Ind. Mar. 19, 2024) (citing *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 7883 n.13 (7th Cir. 2003)).

### 2.   Applicable Law

"Federal courts sitting in diversity must apply the personal jurisdiction rules of the forum state." *Webber v. Armslist LLC*, 70 F.4th 945, 953 (7th Cir. 2023) (citation omitted).[3] "The Illinois long-arm statute[, 735 ILCS 5/2-209(c),] permits jurisdiction to the same limits as the Due Process Clause." *Moomaw v. GeoSnapShot PTY LTD*, DWD-23-1321, 2024 WL 991531, at *5 (S.D. Ill. Mar. 7, 2024); *see also Dale v. Deutsche Telekom AG*, TMD-22-3189, 2023 WL 7220054, at *5 (N.D. Ill. Nov. 2, 2023).[4] The Due Process Clause allows personal jurisdiction over an out-of-state

---

[3] Ms. Gaul has established the Court's ability to exercise diversity jurisdiction over the matter, pursuant to 28 U.S.C. § 1332(d)(2). *See* Doc. 1, ¶ 7.

[4] Specifically, the Illinois long-arm statute, 735 ILCS 5/2-209(c), provides that "a court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." "Although there may be theoretical differences between the federal and Illinois constitutional standards, the Seventh Circuit has observed that 'no Illinois case has provided a definitive explanation' of these differences." *AAA Max 1 Limited v. Boeing Co.*, SLE-23-853, 2023 WL 4760587, at *4 (N.D. Ill. July 26, 2023) (quoting *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019)).

defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be general or specific. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020).

### 3.   General Jurisdiction

SignalHire argues that the Court lacks general jurisdiction over it because 1) it is a Polish company with its principal place of business in Warsaw, Poland and 2) the Complaint does not allege SignalHire's business interests in Illinois are sufficient to render it at home in the forum state. Doc. 11 at 9-10; Doc. 14 at 5-6. Because Ms. Gaul did not respond to SignalHire's general jurisdiction argument, the Court must conduct only a plausibility analysis. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [a court] is given plausible reasons for dismissing a complaint, [the court is] not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."); *see also Braun v. Village of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022) ("A litigant waives an argument by failing to make it before the district court."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 718, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.") (citing *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005)).

Here, SignalHire's argument appears more than plausible. "General jurisdiction over an out-of-state corporation may be appropriate when its affiliations with the forum state are so continuous and systematic as to render the corporation essentially at home in that state." *Snodgrass v. Berklee Coll. of Music*, 559 F. App'x 541, 542 (7th Cir. 2014) (citation omitted). Although Ms. Gaul alleges that SignalHire conducts business in Illinois, the Complaint falls short of asserting

the kind of pervasive or exclusive commercial contacts that are required for SignalHire to be at home in Illinois. *See Alani Nutrition, LLC v. Ryse Up Sports Nutrition, LLC*, CPK-23-5196, 2024 WL 148969, at *4 (N.D. Ill. Jan. 12, 2024) (concluding that advertisement and solicitation of Illinoisians in combination with the distribution and sale of products in Illinois did not combine to create general jurisdiction over the defendant because of, *inter alia*, the overall lack of "exclusive or unique" relationships with the state). Accordingly, the Court concludes that it does not have general jurisdiction over SignalHire. And so, the Court turns to specific jurisdiction.

### 4. Specific Jurisdiction

Specific jurisdiction exists when three requirements are met: First, the defendant must have purposefully directed its activities at the forum state or purposefully availed itself of the privilege of conducting business in the forum; second, the alleged injury must arise out of or relate to the defendant's forum-related activities; and third, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Sheehan v. Breccia Unlimited Co. (In re Sheehan)*, 48 F.4th 513, 522 (7th Cir. 2022). Here, the Parties primarily dispute whether SignalHire purposefully directed its activities towards Illinois.

"The Seventh Circuit has distilled the purposeful-direction requirement [] into the following three elements: (1) intentional conduct ...; (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Cityzenith Holdings, Inc. v. Liddell*, SLE-22-5101, 2023 WL 5277888, at *4 *N.D. Ill. Aug. 15, 2023) (citation and quotation omitted). These elements ensure that a nonresident defendant is not unjustly reeled into court through "random, fortuitous, or attenuated contacts with the forum state." *Hanchett Paper Co. v. Off. Depot, LLC*, VMK-23-1591, 2023 WL 5390229, at *3 (N.D. Ill. Aug. 22, 2023) (citing *Walden v. Fiore*, 571 U.S. 277, 286

(2014)). Indeed, "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Auffenberg v. AddMi, Inc.*, GCS-23-1887, 2023 WL 7411107, at *3 (S.D. Ill. Nov. 9, 2023) (quoting *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)).

SignalHire argues that there is no specific jurisdiction because 1) it has no business connections in Illinois, 2) it does not collect information for its database from an Illinois source, 3) it does not direct advertising to Illinois or Illinoisan residents, and 4) the website is geographically neutral. Doc. 11 at 10-15. SignalHire supports its assertion through a proffered declaration from Laura Robyn Edison, SignalHire's Data Protection and Information Officer. Doc. 11-1 (the "Edison Declaration"). In the Response, Ms. Gaul argues that SignalHire purposefully directed its activities toward Illinois by collecting Illinoisans' personal data and using those individuals' locations across Illinois to sell its service. Doc. 13 at 7-8. Ms. Gaul also avers that the nexus between her injury and SignalHire's Illinois-related activities weighs in favor of specific jurisdiction, because SignalHire knew of, and used, Ms. Gaul's Illinois citizenship to advertise and sell its service. *Id.* at 8-9. In the Reply, SignalHire stresses that Ms. Gaul failed to refute the Edison Declaration, which provides the necessary evidence for the Court to conclude that SignalHire did not purposefully direct its conduct towards Illinois. Doc. 14 at 6-8. And, SignalHire argues that Ms. Gaul ignored key persuasive and precedential holdings while misrepresenting the authority on which she relies. *Id.* at 8-10.

To be sure, "simply owning and operating a website that is accessible in Illinois is insufficient to confer personal jurisdiction." *Shebesh v. Geneanet, S.A.*, NLM-23-4195, 2024 WL 2019447, at *4 (N.D. Ill. May 3, 2024) (citing *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011)). Instead, Ms. Gaul "must show that, in addition to operating a website accessible in Illinois,

[SignalHire] in some way target[s] the forum state's market." *HS Wholesale Ltd. v. HS Glob. Distrib., LLC*, SLE-23-7942, 2024 WL 774910, at *4 (N.D. Ill. Feb. 25, 2024) (quotation and citation omitted). The Parties devote significant attention to *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020*), in arguing whether Ms. Gaul has made such a showing.

In *Lukis*, a viewer searching a name on the defendant's website would be offered a limited free preview of an individual's background report. The purpose of the free preview was to entice viewers to pay a monthly subscription for unfettered access to the defendant's database of background reports. There, the court held that the defendant was subject to personal jurisdiction because it was "alleged to have engaged in repeated, intentional conduct directed at Illinois and its residents—using their personal information, derived from databases operated by state and local governments in Illinois—to advertise its subscription services." *Id.* at 759. In contrast to *Lukis*, the unrebutted affidavit evidence here shows that SignalHire did not derive its database from Illinois-operated sources. Such a fact, while helpful to SignalHire, is nevertheless not dispositive to the Court's analysis. Indeed, it is rare that two suits will present identical jurisdictional facts, so this Court will not artificially impose a new burden on Ms. Gaul in stating her *prima facie* case.

In this case, the Court takes special note that the Marketing Page ***intentionally*** discloses that Ms. Gaul lives in Normal, Illinois. Ms. Gaul's location is not without meaning, as SignalHire publicly touts itself as "a must-have tool for headhunters looking to increase their talent pool and marketers who need to obtain relevant, factual data on their competitors or prospects." https://www.signalhire.com/aboutUs (last accessed July 23, 2024). If SignalHire aims to market this database to potential employers, including the prospective employee's location in Illinois certainly seems to be a key marketing strategy. Thus, SignalHire's presentation of Illinoisans' locations leads the Court closer to concluding that it purposefully directed the conduct at issue in

this case towards Illinois.[5] Indeed, this Court has previously considered similar facts in making such a finding. *See, e.g.*, *Gaul v. Truth Now, LLC*, JES-21-1314, 2022 WL 3647257, at *2-4 (C.D. Ill. Aug. 24, 2022) (finding personal jurisdiction where the defendant "seeks out and compiles identifying information on Illinois residents, profiles this information in free previews and uses it to induce Illinois residents to buy a monthly subscription service.").

The Court recognizes that SignalHire has suggested that *Gutierrez v. Wemagine.AI LLP*, TMD-21-5702, 2022 WL 252704 (N.D. Ill. Jan. 26, 2022), - a case it claims was ignored by Ms. Gaul - supports the proposition that collecting data from Illinois residents does not necessarily create personal jurisdiction.[6] While such a statement may be true, the contours of each and every case matter; the devil is in the details. And, the nuances of *Gutierrez* actually support the exercise of personal jurisdiction here. In that case, the court emphasized as significant that the plaintiff "chose to download" the defendant's mobile application. Such a statement reinforces the maxim that a plaintiff cannot be the sole connection between the defendant and the forum. *See Expeditee*

---

[5] The Court takes notice that SignalHire hosts a webpage devoted solely to State of Illinois employees, which includes over 2500 profiles. *See* https://www.signalhire.com/companies/state-of-illinois/employees? (last accessed July 23, 2024). Although this information may have not been scraped from an Illinois server, it certainly weighs in favor of finding that SignalHire uses individuals' Illinois connections as an advertising stratagem. Albeit this point was not raised by the Parties, so the Court refrains from factoring this advertisement into its holding.

[6] SignalHire also takes issue with Ms. Gaul's failure to fully brief *Gullen v. Facebook.com, Inc.*, JLA-15-7681, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016). That case involved a plaintiff's allegations that the defendant unlawfully obtained, and subsequently stored, his biometric data from a photo that was uploaded to the defendant's website by a third party. *Id.* at 1. However, that case is unpersuasive for two reasons. First, unlike the case *sub judice*, the defendant's allegedly violative conduct had no connection to its actual contacts with Illinois. *Id.* at 2. And, when viewing specific jurisdiction under the intentional tort lens, like here, the court concluded that the plaintiff "could not plausibly[] allege that [the defendant] knew an Illinois resident would upload a photo of him and tag his name to it, thereby (allegedly) giving [the defendant] access to plaintiff's biometric information." *Id.* at 3. The intricacies of the third-party interaction in *Gullen*, which may have helped the defendant in that case, are not applicable here.

*LLC v. Entities Listed on Exhibit 1*, CPK-21-6440, 2022 WL 1556381, at *4 (N.D. Ill. May 17, 2022). In this way, the Court notes that Ms. Gaul did not somehow manufacture a relationship between Illinois and SignalHire, rather, SignalHire chose, of its own accord, to compile information on Illinoisans and use their Illinois residency as a marketing tool. Because SignalHire appears to have "take[n] steps to reach consumers in [Illinois], it has created a relationship with the forum state that has 'special relevance' to the litigation." *Wilson v. CooperSurgical, Inc.*, DWD-22-1651, 2023 WL 6216933, at *10 (S.D. Ill. Sept. 25, 2023).

The Court is also mindful of several deficiencies in the Edison Declaration. For one, the declaration indicates that SignalHire never directly targets any advertisement to Illinois. This is unavailing since the Marketing Page is an advertisement which, for the reasons stated above, is reasonably construed to target Illinois. *Cf. Mutnick v. Clearview AI, Inc.*, SJC-20-512, 2020 WL 4676667, at *2 (N.D. Ill. Aug. 12, 2020) (resolving a conflict between the complaint's allegations and the defendant's affidavits in the plaintiff's favor for purposes of personal jurisdiction). Furthermore, the Court is mindful that the Complaint raises a plausible inference that SignalHire contracts with Illinois customers and otherwise accepts payment from Illinoisans, which is integral to establishing specific jurisdiction. *See Brown v. AS Beauty Grp. LLC*, LAH-22-7288, 2024 WL 2319715, at *3 (N.D. Ill. May 22, 2024) (considering, *inter alia*, that the defendant "entered into contracts in Illinois [and] accepted payment for [its] products from Illinois residents" in finding the defendant purposefully directed its conduct to Illinois). Yet, the Edison Declaration does not address, with any meaningful detail, the extent of SignalHire's sales in Illinois. Instead, the declaration avers that less than one percent of SignalHire's total subscription revenue comes from Illinois subscribers. This statistic is unavailing, as "'the proper test for personal jurisdiction is not based on a percentage of business analysis ... but rather on whether the absolute amount of business

11

conducted [in the forum] represents something more than 'random, fortuitous, or attenuated contacts' with the state." *AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at *5 (6th Cir. May 8, 2024) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891-92 (6th Cir. 2002) in turn quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *cf. HealthSmart Foods, Inc. v. Sweet Nothings, Inc.*, MPB-23-60, 2023 WL 11051729, at *3 (S.D. Ind. Nov. 28, 2023) ("[The defendant's] argument that it has 'a very small number of sales to Indiana consumers' is unconvincing. The Supreme Court has warned courts to avoid 'talismanic jurisdictional formulas' when assessing personal jurisdiction.") (quotation and citation omitted); *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997) (recognizing, as to a web-based platform, that 3,000 subscriptions, or 2 percent of total subscriptions, was a sufficient jurisdictional basis as the Supreme Court emphasizes the nature and quality, rather the quantity, of contacts with the forum).

Furthermore, several of the facts in the declaration do not tilt the personal jurisdiction analysis one way or another. For example, SignalHire states that it has never shipped any products to Illinois, but SignalHire is a digital enterprise that offers subscriptions to its online database, thus obviating the need for any shipments. Similarly, SignalHire notes that none of its servers are located in Illinois, but if the allegedly violative conduct relates to its contacts with Illinois, the server being located elsewhere does not drive or otherwise augment the Court's analysis. *Cf. Kukovec v. Estée Lauder Cos., Inc.*, MSS-22-1988, 2022 WL 16744196, at *3 n.2 (N.D. Ill. Nov. 7, 2022) ("If the try-on tool relates to defendant's contacts with Illinois, the fact that the tool is hosted on a server somewhere else wouldn't affect the personal-jurisdiction analysis."). And, SignalHire swears that its website is geographically neutral, but that fact alone does not preclude the possibility that it still purposefully directed its conduct towards Illinois, as is the case here. *Cf.*

*Greene v. Karpeles*, GF-14-1437, 2019 WL 1125796, at *7 (N.D. Ill. Mar. 12, 2019*) (concluding that the defendant purposefully availed himself of the Illinois market, even if it was "no particular interest to him," because he operated "an exchange that generated thousands of Illinois accounts and [] purport[ed] to safeguard the assets of … Illinois users.").

Despite the aforementioned problems with the Edison Declaration, the Court is certainly mindful of certain jurisdictional facts, as stated in the declaration, that weigh against a finding of personal jurisdiction. *See, e.g.*, Doc. 11-1 at 2-3 (noting that SignalHire has never had employees in Illinois). Yet, upon balancing the allegations in the Complaint with the facts in the Edison Declaration, the Court finds that SignalHire purposefully directed its conduct towards Illinois by targeting its business towards the forum by using Illinois residency as a promotional metric. This point is exacerbated by the lack of a plaintiff-created nexus between SignalHire and the forum. The Court's holding is further bolstered by the plausible inference that SignalHire contracts with, and accepts payments from, Illinois clients. This is so, notwithstanding that Illinoisans constitute less than one percent of its subscription-based revenue. And, SignalHire's advertising tactics, as described above, "support reasonable foreseeability of harm felt in Illinois." *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 590 (N.D. Ill. 2021). Accordingly, the Court finds that Ms. Gaul has sufficiently alleged that SignalHire purposefully directed its supposed unlawful conduct toward Illinois, and that her injuries are related to those activities.

To complete its analysis, the Court must determine whether exercising personal jurisdiction over SignalHire would offend the traditional notions of fair play and substantial justice. In assessing this jurisdictional prong, the Court's consideration includes "the burden on defendants, the forum state's interest in adjudicating the matter, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient

13

resolution of the underlying dispute, and the shared interest of the several states in furthering fundamental substantive social policies." *Jaeger v. RDX, LLC*, SEM-22-3018, 2023 WL 4355030, at *5 (C.D. Ill. July 5, 2023) (citation omitted). Notably, "'[t]hese factors rarely will justify a determination against personal jurisdiction.'" *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 909 (N.D. Ill. 2015) (quoting *Purdue Rsch. Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 781 n.10 (7th Cir. 2003)) And, "'where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Majumdar v. Fair*, 567 F. Supp. 3d 901, 914 (N.D. Ill. 2021) (quoting *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012)).

SignalHire has failed to develop an argument in response to this requirement, and so the Court's analysis could end here. *See  Salcedo v. RN Staff Inc.*, SEB-21-1161, 2023 WL 2403832, at *8 (S.D. Ind. Mar. 8, 2023) (denying the defendant's motion under Rule 12(b)(2), in part, because plaintiff established the "minimum contacts" requirement but the defendant did not advance "a single relevant argument" as to whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice). Even so, the facts underlying this litigation force the Court to conclude that the exercise of jurisdiction over SignalHire is reasonable.

First, the Court notes that the IRPA is a state law tort action, *see Jordan v. Jewel Food Stores, Inc.*, 83 F. Supp. 3d 761, 772 (N.D. Ill. 2015) ("Illinois's right of publicity tort—as codified by the IRPA—is an intentional tort...") (citation omitted), and "Illinois has a strong interest in providing a forum for its residents and local businesses to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors." *Tamburo v. Dworkin*, 601 F.3d 693, 709 (7th Cir. 2010); *see, e.g.*, *Fairly Odd Treasures, LLC v. P'ship and Unincorporated Ass'ns Identified in Schedule "A"*, MFK-21-6136, 2024 WL 1639815, at *3 (N.D. Ill. Apr. 16, 2024) ("By setting

14

up its interactive website and allowing sale and shipment of its products to Illinois residents, [the defendant] structured its business to easily serve Illinois consumers."). Second, even though SignalHire is a foreign entity, its "inconvenience is not a dispositive factor because modern technology and transportation allow it to litigate with relative ease anywhere in the United States" and it has "already retained counsel" in Illinois. *Lab Verdict, Inc. v. Lab Equip Ltd.*, 436 F. Supp. 3d 1181, 1189 (S.D. Ind. 2020) (citing *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000)). Finally, "asking [SignalHire] to defend against its alleged wrongdoing in a forum in which it has [] benefitted isn't constitutionally unfair." *Zimmer, Inc. v. Zimmer Elektromedizin Gmbh*, DRL-19-405, 2022 WL 1154835, at *6 (N.D. Ind. Apr. 18, 2022). These reasons, when combined or individually, lead the Court to conclude that its exercise of personal jurisdiction over SignalHire is reasonable and inoffensive.

In light of the foregoing, SignalHire's Motion under Rule 12(b)(2) is DENIED, because Ms. Gaul has sufficiently alleged a *prima facie* case as to the Court's ability to exercise personal jurisdiction over the Defendant.

### B. Rule 12(b)(6)

SignalHire argues in the alternative to its Rule 12(b)(2) stance, that under Rule 12(b)(6), Ms. Gaul has failed to plead facts that state a claim. Doc. 10. In particular, Signal Hires argues that 1) Ms. Gaul's claim is barred by the IRPA's statute of limitations, and 2) she failed to allege her identity was used for a "commercial purpose," as is required to state an IRPA claim. *Id.* at 2.

#### 1. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In reviewing the Motion, the Court accepts well-pleaded allegations in a complaint as true and draws all permissible

inferences in favor of the nonmovant. *See Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 612 (7th Cir. 2019). To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put the defendant on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "allegations must be enough to raise a right to relief above the speculative level." *Hardimon v. Am. River Transp. Co., LLC*, 95 F.4th 1130, 1133 (7th Cir. 2024) (citation omitted).

Of relevance here, "[a] complaint need not anticipate affirmative defenses like the statute of limitations and will not be dismissed just because it does not confirm its own timeliness." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 822 (7th Cir. 2022) (citing *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012)). However, "dismissal under [Rule 12(b)(6)] is allowed if the complaint contains everything needed to establish the affirmative defense." *Watson v. Metro. Enforcement Grp. of S. Ill.*, No. 23-1412, 2023 WL 5276607, at *1 n.2 (7th Cir. Aug. 16, 2023) (citing *Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017)). "But when it is not clear from the face of the complaint that an affirmative defense applies, the burden is on the defendant to plead and prove it." *Sanders v. St. Joseph Cnty., Ind.*, 806 F. App'x 481, 485 (7th Cir. 2020) (citing *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)).

## 2. Commercial Purpose

Illinois law recognizes a statutory right of publicity. "The right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each

16

individual's right of publicity." 765 ILCS 1075/10. The IRPA defines a "commercial purpose" as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5. An individual must be a natural person, and identity includes that individual's name. *Id.* The Act "covers all aspects of a person's identity, whether the information is derived from public or private sources," *Hoffower v. Seamless Contacts Inc.*, MFK-22-2079, 2024 WL 2882213, at \*4 (N.D. Ill. June 7, 2024) (citation omitted), and it prohibits the "use [of] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent." 765 ILCS 1075/30. "To state a claim under this provision, a plaintiff must plead (1) the appropriation of her identity, (2) without consent, (3) for [the] defendant's commercial benefit." *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778, 782 (N.D. Ill. 2021) (citing *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019)). The first two elements are not at issue.

SignalHire argues that it did not use Ms. Gaul's identity for a commercial purpose, because all information about a specific individual, as seen on the Marketing Page, may be accessed for free. Doc. 11 at 17. SignalHire also avers that the IRPA claim fails since Ms. Gaul's information was not used to advertise a separate product, because her personal information is the product itself. *Id.* at 18-19. Ms. Gaul, in the Response, argues that "free previews" are actionable under the IRPA when, as here, they are used to encourage a subscription purchase. Doc. 13 at 14-16. And, Ms. Gaul contests SignalHire's separate product argument on the basis that her information is a mere drop in the ocean, and the true product is SignalHire's subscription offering, which opens the floodgates and allows customers to access the data of many thousands of individuals. *Id.* at 17-19. In the Reply, SignalHire distills its prior arguments and urges the Court to conclude there was no

commercial use of Ms. Gaul's identity because her information was not solely obtainable from a

subscription, rather, it was also obtainable through the free trial. Doc. 14 at 14-17.

The use of a plaintiff's identity in connection with a "free preview" to advertise or promote

a monthly subscription service is a "textbook example" of an IRPA violation. *Green v. Datanyze,*

*LLC*, JCD-23-1605, 2024 WL 168123, at *2 (N.D. Ill. Jan. 16, 2024) (collecting cases). The

Complaint clearly alleges that SignalHire used Ms. Gaul's identity to encourage a user to sign up

for a free trial, and in turn, a paid subscription. SignalHire seems to think that it is insulated from

liability under the IRPA because Ms. Gaul's identity was used to directly advertise a free trial

rather than the paid subscription. But such an advertising tactic cannot shield SignalHire from

liability, as "it is a distinction without a difference [because t]he free previews are part of

[SignalHire's] efforts to sell its product." *Siegel v. Zoominfo Tech., LLC*, CPK-21-2032, 2021 WL

4306148, at *3 (N.D. Ill. Sept. 22, 2021).

Furthermore, this is clearly not a case where the plaintiff's personal information is sold as

a standalone product. *See, e.g.*, *Dobrowolski v. Intelius, Inc.*, MSS-17-1406, 2018 WL 11185289,

at *3 (N.D. Ill. May 21, 2018) (concluding that a free preview of an individual's information is not

used to advertise a separate product under the IRPA if the product for sale consists solely of that

individual's information). Rather, as soundly alleged in the Complaint, Ms. Gaul's identity was

used to entice customers, through a free trial, into purchasing subscription access to a database

containing the identities of thousands of individuals. *Cf. Mackey v. PeopleConnect, Inc.*, VMK-

22-342, 2023 WL 2561621, at * 9-10 (N.D. Ill. Mar 17, 2023) (noting that the plaintiff established

a commercial purpose under the IRPA by alleging that the defendant used "his likeness to sell not

just his own yearbook image and personal information, but subscriptions to Classmates.com that

incorporate additional services."), *vacated on other grounds*, No. 23-1617, 2023 WL 4417316 (7th

Cir. July 5, 2023). The subscription, rather than Ms. Gaul's personal information, is SignalHire's true offering. Thus, Ms. Gaul has sufficiently alleged that her identity was used to promote a separate product, which some courts hold to be necessary under the IRPA. *See, e.g.*, *Thompson v. Getty Images (US), Inc.*, MFK-13-1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013).

In light of the foregoing, Ms. Gaul has adequately alleged that SignalHire's use of her identity was for a commercial purpose under the IRPA, and so this argument does not necessitate dismissal of the suit.

### 3. Statute of Limitations

"A one-year statute of limitations applies to claims brought under the IRPA, and the clock begins to run when the allegedly infringing publication was first published." *HASelect Medical Receivables Litig. Fin. Fund Int'l, SP v. Clark*, JRB-22-4269, 2024 WL 1328839, at *4 (N.D. Ill. Mar. 28, 2024) (citation omitted).[7] However, the limitations period may be tolled if the publication "at issue involves a continuing or repeated injury." *Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1046 n.1 (N.D. Ill. 2016), *aff'd*, 653 F. App'x 482 (7th Cir. 2016). In such a case, the limitations period begins to run on the "date of the last injury or the date the tortious acts cease." *Ratchford v. AEG Ventures, LLC*, JZL-17-7368, 2019 WL 10248701, at *5 (N.D. Ill. Mar. 11, 2019) (citation and quotation omitted).

---

[7] Notably, there is an open question as to whether there is a one-year or five-year statute of limitations for IRPA claims. *See Giovannelli v. Walmart, Inc.*, EEC-21-1092, 2022 WL 972304, at *2-4 (N.D. Ill. Mar. 31, 2022). SignalHire indicates that there is a one-year limitations period, whereas Ms. Gaul does not address the applicable limitations period. This Court, consistent with the weight of authority, including both Illinois state court rulings, *see, e.g.*, *Cantwell v. N.H. Scott and Hebblethwaite Funeral Home, Inc.*, 2023 IL App (1st) 221335-U, 2023 WL 4288342, at *2 (2023), and Illinois federal court decisions, *see, e.g.*, *Lopez v. Admiral Theatre, Inc.*, MFK-19-673, 2019 WL 4735438, at *2 (N.D. Ill. Sept. 26, 2019) (collecting cases), holds that a one-year limitations period applies to IRPA claims.

Here, SignalHire argues that the Marketing Page indicates that it published Ms. Gaul's information no later than February 26, 2021 - two and a half years before the suit was filed - and so the action is barred by the one-year statute of limitations. Doc. 11 at 16. In the Response, Ms. Gaul avers that the Marketing Page containing the words "Last updated: 2021-02-26" is irrelevant, because that language possibly indicates the last date in which the internet was scraped for her personal information, rather that the date it was published. Doc. 13 at 12-13. Instead, Ms. Gaul urges the Court to consider the operative publication date to be when an individual searched SignalHire's database and retrieved the free preview of her personal information (*i.e.*, the Marketing Page), the timing of which is presently unclear. *Id.* In the Reply, SignalHire echoes its earlier argument and emphasizes that IRPA claims are subject to the single publication rule, which means that the statute of limitations began to run the first date on which the Marketing Page was readily accessible to the public. Doc. 14 at 11-14.

At present, SignalHire has failed to meet its burden to show that the Marketing Page was generated outside of the statute of limitations. SignalHire has offered no evidence showing when the Marketing Page was first published. And, viewing the reasonable inferences in Ms. Gaul's favor as the nonmovant, it certainly appears that the "last updated" date could be the date in which SignalHire last scraped the internet for her personal information. It is not patently clear that the date a profile was "last updated" is necessarily the date of publication. Nor is it clear as to whether SignalHire's technology generated the Marketing Page before or after a prospective customer selected Ms. Gaul's name for a free preview, even if the information is otherwise stored in its internal database. Indeed, it is plausible for SignalHire to have obtained Ms. Gaul's information on February 26, 2021, but not have published it vis-à-vis the Marketing Page until a consumer actively sought it out. SignalHire apparently stores thousands and thousands of employee profiles,

and it certainly seems reasonable that not all of those profiles are accessible at any given moment. Accordingly, SignalHire's statute of limitations argument must fail. *Cf. Boyd v. Spokeo, Inc.*, No. 21STCV13644, 2024 WL 1285527, at *5 (Cal. Super. Ct. Mar. 14, 2024). However, SignalHire is not prejudiced from raising this argument again, once the evidentiary record is more developed.

### III.     Conclusion

For the reasons discussion throughout this Order and Opinion, SignalHire's Motion (Doc. 10) is DENIED in its entirety.

Entered on this 5th day of August 2024.

<u>s/ James E. Shadid</u>
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE